WARREN R. JONES and ZELLA L. JONES, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Jones v. Commissioner
Docket No. 2285-81.
United States Tax Court
T.C. Memo 1984-257; 1984 Tax Ct. Memo LEXIS 413; 48 T.C.M. (CCH) 95; T.C.M. (RIA) 84257; May 14, 1984. *413 Held: Amount of unreported income determined; fraud addition not found for one taxpayer and found for other. Brian P. Gettings, for the petitioners. Scott D. Anderson, for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: Respondent determined deficiencies in income tax and additions to tax under section 6653(b) [1] as follows: Addition to Tax
Year
Deficiency
Sec. 6653(b)
1972
$17,536.62
$8,768.31
1973
45,766.89
22,883.45
1974
24,261.89
12,130.95
The issues for our decision are the amounts of unreported income for each of the years and whether *414 or not the fraud addition applies. For convenience, our Findings of Fact and Opinion are combined. Some of the facts have been stipulated and are so found. At the time of filing of the petition, Warren R. Jones and Zella L. Jones (petitioners) resided in the State of Virginia. They filed timely joint income tax returns for the calendar years 1972, 1973 and 1974. On those returns, petitioners correctly reported the income received by petitioner Warren R. Jones (Jones) from his employers, Expressway Constructors (Expressway) and Talbot-Marks Company, Inc. (a part owner of Expressway). During the years at issue Jones was employed by Expressway as a grade supervisor on a construction job on a portion of Interstate 95 in Northern Virginia. Extensive fill was required for this job. During these three years E & R Trucking Company, Inc. (E & R), was engaged in removing excavated material from a nearby job site. In order to reduce its cost of trucking the excavated materials, representatives of E & R made an arrangement with Jones and his immediate superior, Ben Johnston (Johnston), for the excavated materials to be deposited at the Expressway construction site. For this convenience *415 to E & R (which obviously also assisted Expressway), E & R paid Jones by check a total of $50,864.50 in 1972, $95,790.31 in 1973, and $48,588.25 in 1974, aggregating over $195,000. In addition, Site Engineering, Inc., paid Jones the sum of $6,348.15. There is no explanation in the record as to the reason for this latter payment to Jones, but we infer it was a job-related matter. Most of the checks from E & R were deposited in accounts maintained by petitioners, although several were made out to a son of Jones' and deposited in that son's account. A few checks were either cashed or endorsed to third parties. There is no dispute as to the receipt by Jones of these funds; the factual dispute arises out of whether or not some portion of the funds was paid over by Jones to Johnston and to two employees of another contractor or subcontractor (as petitioners claim) or whether all the funds were retained by petitioners as respondent asserts. Respondent's investigation of Jones resulted from his investigation of E & R, which also led to investigation of Johnston and presumably others. Both Johnston and Jones were indicted for criminal fraud for failure to report income received from *416 E & R. Johnston pled guilty to a charge of failing to report receipt of approximately $14,000, at least part of which was in the form of checks from E & R. Jones pled nolo contendere to charges relating to moneys received by him from E & R. Amount of Unreported Income
Jones admits having retained about 40 percent of the E & R payments, or approximately $80,000. With respect to the remaining amount, he contends that the arrangements were all made by Johnston, including having the E & R payments channeled through Jones, that Johnston's share was one-half of each payment, and that Johnston insisted on being paid by Jones in cash. Jones also insists that two other individuals shared in the E & R and Site Engineering, Inc., payments. Jones obtained cash to pay Johnston and the other two individuals, he claims, by cashing some of the E & R checks and by cashing other checks, including expense reimbursements received from Expressway and Talbot-Marks Company. To the extent that Jones acted as a conduit with respect to these payments, the funds were not received under a claim of right and therefore would not be taxable to Jones. The absence of an enforceable obligation to *417 pay over to Johnston and the others their shares of the payments is immaterial. In this respect, this case is governed by , revg. in part and affg. in part a Memorandum Opinion of this Court. See also . Jones would have needed over $100,000 in cash to make the conduit payments as claimed by him. An analysis by respondent of the two principal bank accounts maintained by petitioners during the period, in which were deposited most of the E & R checks as well as salary checks, appears to show that Jones would have been required to obtain over $70,000 from sources other than transactions reflected by these bank accounts. Other available sources were cashed expense reimbursements and cashed salary checks. However, that analysis, while informative, is neither complete nor conclusive. In general, Jones appeared to be a reliable witness. Discrepancies between his statements to respondent's agents in the early stages of the investigation and his testimony are satisfactorily explained. Johnston was obviously involved in the E & R payoffs. He was *418 project manager of the entire job, as well as the immediate superior of Jones and the grading part of the job. It is inconceivable that Johnston would not have become aware of the dumping of fill materials by E & R. His guilty plea confirms this. Thus, Jones' testimony as to sharing the funds with Johnston is in a sense corroborated. Unfortunately, however, Jones kept no written records of his disbursements to Johnston and the others or of his sources for cash to make such payments, which we are convinced he did make. Based on our own analysis of the entire record, and bearing heavily against petitioners who bear both the burden of proof as to the deficiencies and the blame for lack of records, [2] we are satisfied that Jones acted as a conduit for not less than $44,000 out of the approximately $200,000 received from E & R and Site Engineering, Inc. [3] We allocated this sum among the three years in relation to the amounts of unreported income, viz.: 1972 - 28 percent or $12,320; 1973 - 48 percent or $21,120; 1974 - 24 percent or $10,560. The balance of approximately $156,000 constitutioned unreported income to petitioners, allocated by the same percentages. *419 Section 6653(b) Addition to Tax
Petitioners having conceded that there was an underpayment and our having determined the amount thereof, it is now necessary to determine whether or not the addition to tax under section 6653(b) for fraud applies either to Jones or to petitioner Zella L. Jones (Mrs. Jones). As to each person, respondent bears the burden of proof. Section 7454(a); Rule 142(b). Respondent must discharge his burden by clear and convincing evidence. Rule 142(b). Turning first to Mrs. Jones, the record shows that one E & R check was specifically made payable to Mrs. Jones. That check, along with many others, was deposited in a checking account maintained by both petitioners in a bank in Roanoke, Virginia. It seems unlikely that Mrs. Jones was unaware that Jones was receiving checks in substantial sums from E & R. The joint income tax returns of petitioners for these three years were not signed by a tax return preparer and were made out in longhand, presumably by one or the other of petitioners. But there is nothing in the record to indicate which of the petitioners (if either) prepared the returns. Obviously, Mrs. Jones signed each of the returns. An informed *420 person carefully reviewing each of the returns with knowledge of substantial funds being received from E & R might be led to inquire as to whether or not such receipts were taxable. That, however, is a far cry from persuading us by clear and convincing evidence that Mrs. Jones knew that in each year there was a substantial omission from taxable income. In order to prove fraud, respondent must show that the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead or otherwise prevent the collection of taxes. . It is a question of fact to be resolved upon the entire record. , affd. without published opinion . Fraud will never be presumed. . We recognize that substantial omission of income for several successive years strongly evidences fraud. ; . However, as *421 to Mrs. Jones, there is at best a mere suspicion that she knew that the returns for these years substantially understated income. There is no evidence that she participated in or had any specific knowledge of the arrangements under which Jones received the payments from E & R or that she participated in his transfers of cash to Johnston. Therefore, as to Mrs. Jones, respondent has not proven fraud by clear and convincing evidence. While she is bound by our determination as to the amount of the omitted income and as to the deficiencies relative thereto by reason of her joining in the tax returns, her husband's fraud (which we find below) cannot be attributed to her. , affd. per curiam ; . We hold against respondent on the fraud addition with respect to Mrs. Jones. In contrast, we hold for respondent on the fraud addition with respect to Jones. Jones undertakes to excuse his failure to include in his income tax returns that part of the E & R payments which he admits having retained on the ground that *422 he was told by an E & R employee that the payments were not taxable income.There was no corroborating evidence of this statement. By contrast, he admitted to respondent's agent on one of the initial interviews that he understood that these payments by E & R were taxable to him but that he did not include them because he did not wish Mrs. Jones to know about the payments. Even if it were true that Jones received such information from the E & R employee responsible for transmitting the checks to him, he was sufficiently aware of his tax obligations so as to impose on him an obligation to seek tax advice from a responsible person. Moreover, the fact that Johnston insisted on receiving his share of the payoff in cash was sufficient to put Jones on notice of the irregularity of the matter, even if he in fact were not aware of it from the start. Jones held a responsible position on this job and had been in the construction industry for many years. He is bound to have known that any payment for the privilege of dumping materials at his employer's job site belonged to--or at least should have been reported to--his employer. There was certainly no legal basis for payments to him. He *423 cannot fail to have understood that this entire arrangement with E & R, Johnston, himself and others was highly irregular. We note that the 40 percent which Jones concedes he retained was almost equal to his salary from his employer for these three years. The omission from income for three consecutive years of such a significant amount of money is persuasive evidence of fraud. Further, Jones failed to disclose to respondent's agents until well after this matter had proceeded to the prosecution stage that approximately one-half of the receipts from E & R had been transferred in cash to Johnston. While Jones' action may be justified by Jones' claim that Johnston threatened to fire him if he made a disclosure, the failure to tell the truth to respondent's agents is an indicium of fraud. . Similarly, the failure to keep any records of the payments from E & R is an indicium of fraud. ;. For these reasons, respondent has carried his burden of proof on *424 the fraud addition as to Jones. Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all rule references are to the Tax Court Rules of Practice and Procedure.↩
2. See . ↩
3. In making this estimate we have also taken into account the obvious cash needs of petitioners for living expenses, the reduction in the home mortgage and other matters of record.↩